**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| DAVID BAXTER, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:06-cv-1735-RLY-WTL |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

David Baxter ("Baxter") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Baxter applied for DIB on October 16, 2003, alleging an onset date of October 11, 2003. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on November 17, 2005. Baxter was present, accompanied by his attorney. Medical and other records were introduced into evidence. Baxter, a medical expert and a vocational expert testified. The ALJ denied Baxter's application on June 27, 2006. On October 6, 2006, the Appeals Council denied Baxter's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Baxter met the special earnings requirement of Title II of the Act on October 11, 2003, the date he stated he became unable to work, and continued to meet them through at least June 30, 2006; (2) Baxter had not performed any substantial gainful activity since October 11, 2003; (3) the medical evidence established that Baxter had early arthritic changes of his right knee, hammertoes, digits 2, 3, 4, and 5, bilaterally, 1st carpometacarpal joint osteoarthritis with instability involving the right thumb, mild early stenosing tenosynovitis involving the right thumb and right middle finger, and arthrodesis of the left wrist due to malunion of an intra-articular comminuted fracture, but he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Baxter's subjective complaints of pain and/or any other symptomatology, such that he experienced pain and/or any other symptomatology by reason of a medically determinable physical or mental impairment which established that he did not have the residual functional capacity ("RFC") to perform any work which exists in significant numbers in the national economy, were not supported by the objective medical evidence of record, nor by the treatment notes and records from his treating physicians, nor by the reports from the consultative examiners, and were not credible; (5) Baxter had the RFC to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; and his ability to push and/or pull with his upper extremities and/or lower extremities was limited the same as his ability to lift and/or carry; he should never climb ladders, ropes or scaffolds; could occasionally climb ramps and climb stairs; and could occasionally balance, stoop, kneel, crouch, and crawl; he had no limitations or restrictions regarding reaching, handling, performing gross manipulations, or feeling with his bilateral upper extremities, fingering with his dominant right upper extremity, but could only occasionally finger with his left non-dominant upper extremity; he had no visual limitations or communicative limitations; should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards such as heights and machinery; (6) Baxter's activities of daily living were only mildly restricted, he did not have any difficulties in maintaining social functioning, he had only mild difficulties in maintaining concentration, persistence, or pace, and he had never experienced any episodes of decompensation, each of extended duration, each lasting for at least two weeks, due to any emotional, mental, psychological, or psychiatric impairment; (7) Baxter could not perform his past relevant work; (8) Baxter was 52 years of age, which is defined as closely approaching advanced age, and had completed the 12th grade; (9) Baxter did not have any skills which were transferable to the skilled or semi-skilled work functions of other work which he could perform; (10) Section 404.1569 of Regulations No. 4, Section 416.969 of Regulations No. 16, and Rules 202.13 and 202.14, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, indicate a finding of not disabled is appropriate; and (11) even if Baxter was not able to perform a full and complete range of light unskilled work activity, there were numerous light unskilled occupations existing throughout the State of Indiana which he could perform, including cashier (10,000 jobs), general office clerk (2,000 jobs), inspector (3,000 jobs), and security guard (1,000 jobs). With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Baxter was not disabled as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.  Analysis

The ALJ determined that although Baxter had severe impairments, he was capable of performing a significant number of light unskilled jobs. Baxter's sole argument is that at step five, the ALJ failed to fulfill his duty pursuant to Social Security Ruling ("SSR") 00-4p to ask the vocational expert whether her testimony was consistent with the <u>Dictionary of Occupational Titles</u> ("DOT").

In *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006), the Seventh Circuit Court of Appeals discussed the meaning of SSR 00-4p.  In *Prochaska*, the court noted that SSR 00-4p "unambiguously sets out the ALJ's affirmative duty." *Id.* at 735. The court recited the regulation, with emphasis, as follows:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator *will*:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's of VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."

*Id.* (quoting SSR 00-4p)(emphasis in original).

In *Prochaska*, as in this case, the ALJ "took testimony from an expert as to whether certain job requirements were compatible with Prochaska's various limitations, but did not ask whether the expert's analysis conflicted with the DOT." *Id.* The Commissioner concedes that the ALJ did fail to make the proper inquiry of the VE, but argues that the court should find that the ALJ's failure to comply was harmless error.

Baxter contends that various jobs identified by the VE are inconsistent with information found in the DOT. For other jobs, Baxter argues that not enough information was given by the VE to identify which jobs correlate to jobs listed in the DOT. The Commissioner suggests that the court "assume" that the VE's testimony was consistent with the DOT. He argues that Baxter has not suggested conflicts with each and every job identified by the VE. This does not cure, however, the ALJ's initial failure to ask the VE about potential conflicts. Under these circumstances, the court will not merely assume harmless error. In *Prochaska,* the parties disputed whether the VE testimony was inconsistent with the DOT, and the court held that it could not make such a determination in the first instance. *Id.* at 736. Rather than find harmless error, the court remanded the case "so that the ALJ can determine whether the job requirements identified by the vocational expert are, in fact, consistent with the definitions in the DOT and [the claimant's] limitations." *Id.* The Commissioner has identified no persuasive basis on which to distinguish the holding of *Prochaska*. The ultimate outcome of this case might not be altered, which would result in an unfortunate waste of resources, but because the ALJ failed to follow the procedures set forth in SSR 00-4p, a ruling Seventh Circuit precedent does not allow the court to ignore, and because Baxter has asserted inconsistencies between the VE testimony and the DOT, a remand is required. Accordingly, the case must be remanded for further proceedings to determine whether a significant number of jobs exists that Baxter could perform. *See Prochaska*.

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  01/25/2008

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana